UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IANN CHRISTOPHER SIMMONS**, | Case Number 1:13 CV 203 |
| Plaintiff, | Judge Lesley Wells |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | Magistrate Judge James R. Knepp, II |

### INTRODUCTION

Plaintiff Iann Christopher Simmons seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated January 29, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on November 6, 2009 and November 9, 2009, respectively. (Tr. 185, 187). His claims were denied initially and on reconsideration. (Tr. 103, 106, 109, 112). Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 115). At the hearing, Plaintiff, represented by counsel; his father, Dan Simons, R.N.; and a vocational expert (VE) testified. (Tr. 34-98). On October 21, 2011, the ALJ concluded Plaintiff was not disabled. (Tr. 7). Plaintiff's request for appeal was denied, making the decision of the ALJ the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 1481. On

January 28, 2013, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

*Plaintiff's Background, Vocational Experience, and Daily Activities*

Plaintiff was born on September 18, 1991, and claims symptoms from autism, attention deficit hyperactivity disorder (ADHD), and depression limited his ability to work. (Tr. 28, 222). When asked to describe a typical day, Plaintiff said he would need two or three hours to pull his thoughts together and to "get over the flailing of [his] hands and arms and rapid rocking back and forth." (Tr. 252). Plaintiff said he suffered from severe pain in his arms, chest, shoulders, joints, knees, and legs; could not concentrate; had difficulty sleeping; suffered from anxiety and restlessness; had a fear of being alone; and could not follow instructions. (Tr. 64, 232, 252).

At the time of the hearing, Plaintiff worked for a children's party planning company called Fun Makers. (Tr. 40-41, 47). There, Plaintiff worked in a management capacity, oversaw employee breaks, set up and tore down inflatables, drove company vehicles, and ran the balloon chase crew. (Tr. 47). He testified he was in the process of being promoted and would soon be able to supervise his own events. (Tr. 48).

Previously, Plaintiff worked as a dishwasher, front desk worker, kitchen prep cook, mechanic, and garage door installer. (Tr. 49-54, 61, 209-210). Generally, each position was part-time and required him to be on his feet and engage in heavy lifting. (Tr. 61-62). As a front desk manager and mechanic at a bowling alley, Plaintiff turned on bowling alley lanes, handled money, managed customers, and kept the bowling machinery operating. (Tr. 61). According to Plaintiff, he left each job because his hours were cut or the business closed, with the exception of his dishwasher position at Ashland University. (Tr. 49-50, 53-54, 61). He was terminated from Ashland due to performance issues and indicated he could not keep up with the heavy lifting or

fast-paced work. (Tr. 51-53). Plaintiff's father indicated Plaintiff's hours were reduced because he struggled to stay on task, show up to work on time, and complete projects. (Tr. 77-80). Mr. Simmons also said Plaintiff was terminated from his position as a dishwasher because he inappropriately touched and smelled himself. (Tr. 79, 258).

Plaintiff lived with his father until he was eighteen then moved in with his mother. (Tr. 42, 70, 232, 251). Concerning daily activities, Plaintiff maintained personal hygiene, worked part time, used a computer, watched television, occasionally did light cooking, went out to eat or to the movies with friends, attended church biweekly, disassembled mechanical or electronic equipment, babysat, went places with his dad, and visited his mother or father. (Tr. 44-45, 232, 255, 349). Plaintiff described himself as a "mechanical person", enjoyed fixing equipment, and had an interest in ghost busting. (Tr. 50-51). He had a driver's license, flew planes and hot air balloons, and was an ordained minister. (Tr. 65, 83, 89-90, 254).

Mr. Simmons stressed that Plaintiff's problems caused hardships in daily life and were mental rather than intellectual or physical in nature. (Tr. 75, 82-83, 256, 258). For example, Mr. Simmons stated Plaintiff would write a note on his computer screen using permanent marker instead of a sticky note, would constantly take things apart but never put them back together, and would take twenty to thirty breaks while mowing the lawn, often never completing the task. (Tr. 76, 254-55). Mr. Simmons added Plaintiff had been kicked out of several churches and schools, was not allowed inside the Salvation Army, had trouble with the police, could not develop or maintain friendships, was forgetful, could not sit still, and had been accused of inappropriate behavior with a young boy. (Tr. 72-75, 86, 90, 255, 266). However, Plaintiff maintained he had only been kicked out of one church and it was because he reported a member of the church for child abuse. (Tr. 86). Furthermore, he claimed the accusations of inappropriate behavior were

3

made in retaliation for the same incident. (Tr. 45-46, 71, 86).

According to Mr. Simmons, Plaintiff had trouble maintaining personal hygiene and could not coordinate his clothes; remember to clean his clothes, bathe, wash his hair, or shave; control his appetite; or maintain sanitary toilet habits. (Tr. 253). Mr. Simmons further indicated Plaintiff could not cook, manage his medications, or complete household chores. (Tr. 253-54). Although Plaintiff had his driver's license, Mr. Simmons said Plaintiff was a poor driver. (Tr. 254). According to Mr. Simmons, Plaintiff did not shop because he had difficulty managing money and had previously caused financial strain on his parents by making unauthorized purchases, such as a hot air balloon, cell phones, and satellite dishes. (Tr. 82-83, 88, 254-55).

At the hearing, Plaintiff indicated he discontinued medication because the side-effects were too severe and caused headaches. (Tr. 56, 58). He indicated Asperger's caused him to stay at home and sleep or to be forgetful. (Tr. 57-58). Mr. Simmons estimated Plaintiff had been on about 75 different medications throughout his life and had gone through suicidal periods. (Tr. 84). At the time of the hearing, Plaintiff took medication as needed for headaches, received allergy injections, and had tubes placed in his ears. (Tr. 84).

*Educational History*

Plaintiff had a ninth grade education and attended special education classes while in school. (Tr. 72, 229). He stopped physically attending school in sixth grade and enrolled in the Electronic Classroom of Tomorrow (ECOT), an online school, where he earned a 0.75 grade point average his tenth grade year. (Tr. 73, 302). Under his latest individualized education plan (IEP), Plaintiff's goals were to improve in reading (Tr. 309), writing (Tr. 310), math calculations (Tr. 312), and adaptive behavior/social-emotional/study skills (Tr. 314). Plaintiff was assigned to an intervention specialist for online instruction (Tr. 316-17) and was afforded accommodations

on district- and state-wide testing (Tr. 318-19).

On August 31, 2009, Sue Ensch and Barbara S. DeSalvo, Ed.D., completed an evaluation team report where they indicated Plaintiff had a short attention span, was easily distracted, and inattentive. (Tr. 271, 273). They added Plaintiff had average to above-average intelligence, but scored poorly on standardized tests and required a "great deal" of individual attention to successfully complete his work. (Tr. 271).

*Medical History*

On January 12, 2009, Plaintiff complained of right foot pain but an x-ray was negative for fracture, subluxation, and dislocation. (Tr. 279). On September 15, 2009, an antinuclear antibodies (ANA) direct test was also negative. (Tr. 283).

On September 9, 2009, Plaintiff visited Shanna Vore, M.D., to address complaints of body pain and fatigue. (Tr. 290). Plaintiff said he averaged nine to ten hours of sleep per night but still woke up tired. (Tr. 290). Plaintiff reported suicidal thoughts and panic attacks. (Tr. 290). She noted Plaintiff had appropriate affect and demeanor; normal psychomotor function; flat speech pattern; normal thought and perception; and a normal range of motion, strength, and tone. (Tr. 291). She advised Plaintiff to get exercise every day and indicated his fatigue may be caused by poor diet. (Tr. 292). Dr. Vore diagnosed fatigue, anxiety with depression, and myalgias. (Tr. 291).

On October 9, 2009, Plaintiff returned to Dr. Vore for a follow up visit where he continued to complain of fatigue and a lack of interest. (Tr. 293). Plaintiff denied suicidal thoughts but admitted homicidal thoughts. (Tr. 293). Plaintiff's physical and neurological examinations were unremarkable. (Tr. 294). Dr. Vore diagnosed anxiety with depression and acne. (Tr. 294).

5

On January 26, 2010, Plaintiff saw Dr. Vore for a follow-up visit where he complained of constant pain and indicated he stopped taking his medication. (Tr. 296). He no longer had homicidal thoughts but still felt depressed. (Tr. 296). Plaintiff's physical examination remained unremarkable and Dr. Vore diagnosed anxiety with depression. (Tr. 297).

On February 2, 2010, Dr. Vore completed a Mental Status Questionnaire where she indicated Plaintiff had slightly disheveled appearance, childlike and awkward speech, poor eye contact, constricted affect, euthymic mood, history of panic attacks and suicidal or homicidal thoughts, impaired concentration and focus, average intelligence, fair insight, and socially inappropriate behavior. (Tr. 285). Dr. Vore indicated Plaintiff had difficulty interacting with peers, maintaining concentration, and adapting to new situations. (Tr. 286). However, so long as he was on medication, Plaintiff had a good ability to remember, understand, and follow directions; maintain attention; sustain concentration; persist at tasks; and complete tasks in a timely fashion. (Tr. 286).

On February 23, 2010, Plaintiff saw Dr. Vore for a follow-up visit related to depression and an earache. (Tr. 364). Dr. Vore diagnosed anxiety with depression, earache, and acne but indicated Plaintiff seemed happier and more talkative on his medication regimen. (Tr. 365).

On March 23, 2010, Plaintiff saw Dr. Vore for a follow-up visit related to depression. (Tr. 367). Plaintiff complained of insomnia but said he had not experienced panic attacks or anxiety, had more energy, and lost weight. (Tr. 367). Plaintiff's physical examination was unchanged and Dr. Vore diagnosed anxiety with depression and morbid obesity. (Tr. 368).

On May 4, 2010, Plaintiff saw Dr. Vore to address back pain. (Tr. 372). Plaintiff complained of constant, moderate, sharp, dull, and aching pain in his upper back and shoulders which radiated to his neck and upper arms. (Tr. 372). Plaintiff said he experienced hearing loss,

had trouble sleeping, and did not suffer from symptoms of depression. (Tr. 372). Plaintiff had normal range of motion, strength, and tone; no pain on palpitation; tight trapezius and latissimus dorsi muscles; and hunched posture. (Tr. 373). He had appropriate affect and demeanor, normal psychomotor function, normal speech pattern, and normal thought and perception. (Tr. 373). Dr. Vore diagnosed back pain, tinea versicolor, ADHD, and acute serous otitis media. (Tr. 373). Dr. Vore suspected Plaintiff's back pain was from poor posture although she noted it could be fibromyalgia. (Tr. 374).

Mehrdad Tavallaee, M.D., completed a mental residual functional capacity (RFC) evaluation on September 1, 2011 where he primarily diagnosed Asperger's syndrome and secondarily diagnosed severe ADHD and oppositional defiance disorder (ODD). (Tr. 381). Plaintiff was markedly limited in all areas except he was moderately limited in abilities to understand, remember, and carry out very short and simple instructions; ask questions; and request assistance. (Tr. 381-82). Dr. Tavallaee noted Plaintiff had significant limitations in social interactions, reasoning, and judgment. (Tr. 382).

On January 20, 2011, Plaintiff saw a medical provider from Internal Medicine Specialists to address bronchitis and complaints of headaches, body aches, and chest pain. (Tr. 383). Plaintiff was diagnosed with migraines, fibromyalgia, ADHD, and anxiety. (Tr. 383).

Dr. Tavallaee referred Plaintiff to Raymond Baddour, M.D., for a neurological evaluation completed April 14, 2011. (Tr. 393). Dr. Baddour indicated Plaintiff's headaches had increased in severity and frequency over the past month and were likely triggered by lack of sleep. (Tr. 393). On examination, Plaintiff was overweight with an unremarkable gait, normal motor strength, no sensory deficits, tendon reflexes +1 throughout, and plantar responses were

7

downward bilaterally. (Tr. 394). Dr. Baddour concluded Plaintiff's headaches were tension-vascular headaches and recommended prophylactic therapy. (Tr. 394).

*State-Agency Review*

Leslie Rudy, Ph.D., completed a mental RFC on February 26, 2010. (Tr. 326-29). She indicated Plaintiff was not significantly limited except he was moderately limited in abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. (Tr. 326-27). Plaintiff had a full scale IQ score of 76. (Tr. 328). Dr. Rudy recommended Plaintiff limit exposure to high-stress fast-paced work environments and noted he required superficial social interactions and simple, routine, and predictable work tasks that did not involve strict production quotas or time constraints. (Tr. 328). Deryck Richardson, Ph.D., affirmed Dr. Rudy's findings as written. (Tr. 380).

Also on February 26, 2010, Dr. Rudy completed a psychiatric review technique where she concluded Plaintiff had Attention Deficit Disorder (Tr. 331), anxiety with depression (Tr. 335), and Asperger's syndrome (Tr. 339). She found Plaintiff's impairments functionally caused

a mild degree of limitation on Plaintiff's activities of daily living and moderate degree of limitation in maintaining social functioning, concentration, persistence, or pace. (Tr. 340).

On March 26, 2010, W. Jerry McCloud, M.D., completed a physical RFC assessment. (Tr. 344-51). Plaintiff was able to lift or carry up to twenty pounds occasionally and ten pounds frequently, stand or walk about six hours in an eight-hour workday, sit with normal breaks for a total of about six hours in an eight-hour workday, and had no limitation in ability to push or pull. (Tr. 345). Plaintiff was morbidly obese and positive for myalgias despite the fact he had normal range of motion, strength, and muscle tone. (Tr. 345). Dr. McCloud recommended Plaintiff refrain from working around heights and hazards and any work requiring him to balance. (Tr. 345-46, 348). Plaintiff did not have any manipulative, visual, or communicative limitations. (Tr. 347-48). Gerald Klyop, M.D., affirmed Dr. McCloud's findings as written. (Tr. 379).

*ALJ Decision*

The ALJ determined Plaintiff suffered from severe impairments including learning delays, ADHD, insomnia, anxiety disorder, depressive disorder, Asperger's syndrome, IQ results consistent with borderline intellectual functioning, myalgias, obesity, migraines, and fibromyalgia. (Tr. 12).

Plaintiff had the RFC to perform light work, except he could lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six hours each, intermittently and with normal breaks; and must avoid all dangerous machinery, unprotected heights, ladders, ropes, and scaffolding. (Tr. 17). Plaintiff could perform only work which was simple, routine, and repetitious with one- or two-step instructions and without strict production quotas. (Tr. 17). Plaintiff required a supervised, low-stress environment with few decisions and only brief, superficial, and infrequent interaction with the public, co-workers, and supervisors

9

and frequent, hourly redirection by a supervisor to stay on task. (Tr. 17).

Considering Plaintiff's age, education, work experience, RFC, and VE testimony, the ALJ determined Plaintiff could work as a swatch clerk, garment sorter, or bagger. (Tr. 28). Thus, the ALJ determined Plaintiff was not disabled. (Tr. 29).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?
2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's RFC and can he perform past relevant work?
5. Can the claimant do any other work considering his RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if he satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f); 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff claims the ALJ did not: 1) recognize the shifting burden of proof at step five; 2) properly evaluate Plaintiff's complaints of pain; and 3) support the RFC with substantial evidence. (Docs. 11, 14). Plaintiff's arguments are addressed in turn.

*Burden of Proof at Step Five*

Plaintiff argues the ALJ committed reversible error because she failed "to expressly acknowledge the shift in the burden of proof to the [social security administration] on the issue of whether the claimant can perform other work". (Doc. 14, at 1); (Doc. 11, at 6). Of importance,

Plaintiff does not argue the ALJ's decision at step five is unsupported by substantial evidence. (Docs. 11, 14).

To meet his burden at step five, the Commissioner must make a finding "'supported by substantial evidence that claimant has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id*. If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Contrary to Plaintiff's argument, the ALJ expressly recognized the shift in burden of proof at step five. Indeed, the ALJ wrote:

> Although the claimant generally continues to have the burden of proving disability at [step five], a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at [step five], the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 C.F.R.

404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

(Tr. 12). Clearly, the ALJ expressly acknowledged the shifting burden of proof at step five. Accordingly, Plaintiff's argument is directly contradicted by the ALJ's opinion.

What is more, the ALJ met her burden at step five because she supported her determination with substantial evidence. To this end, she elicited VE testimony in response to a hypothetical which accurately portrayed Plaintiff's limitations, then expressly relied on the testimony to make her determination. (Tr. 28-29, 91-98). Plaintiff does not allege the ALJ did not comply with regulatory obligations in her treatment of VE testimony, nor does the undersigned see cause to find otherwise. Accordingly, Plaintiff's first argument is without merit.

*Pain and Credibility*

Next, Plaintiff argues the ALJ did not afford adequate weight to Plaintiff's subjective complaints of pain. (Doc. 11, at 6-8).

The Sixth Circuit recognizes that pain alone may be disabling. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding his pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling, there must be: 1) objective medical evidence of an underlying medical condition; and 2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038

13

(6th Cir. 1994). This standard does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

A plaintiff's failure to meet the above-stated standard does not necessarily end the inquiry. Rather, "in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability." *Swain v. Comm. of Soc. Sec.*, 297 F. Supp. 2d 986, 989 (N.D. Ohio 2003) (citing SSR 96-7p).

The ALJ is to consider certain factors in determining whether a claimant has disabling pain: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication to relieve pain; and 6) any measures used to relieve pain. 20 C.F.R. 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. An ALJ is not required, however, to discuss each factor in every case. *See Bowman v. Chater*, 1997 WL 764419, at *4 (6th Cir. 1997); *Caley v. Astrue*, 2012 WL 1970250, at *13 (N.D. Ohio 2012).

Further, an "ALJ is not required to accept a claimant's subjective complaints" and may "consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d at 476. An ALJ's credibility determinations about the claimant are to be accorded "great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' However, they must also be supported by substantial evidence." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Walters*, 127 F.3d at 531); *see also Warner*

*v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("we accord great deference to [the ALJ's] credibility determination.").

Here, to formulate the RFC determination, the ALJ acknowledged the requirement that she consider pain under SSR 96-7p and 20 C.F.R. § 404.1529. (Tr. 17). Although the ALJ determined Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, she found Plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms were not credible to the extent they were inconsistent with the . . . [RFC] assessment." (Tr. 20). Specifically, the ALJ found Plaintiff's activities of daily living, work history, and non-compliance with treatment did not support his allegations of pain. (Tr. 18-20). Having reviewed of the record, the undersigned finds the ALJ's pain and credibility determination supported by substantial evidence.

Indeed, Plaintiff engaged in a wide variety of activities of daily living which are inconsistent with his claims of disabling pain. To this end, Plaintiff maintained a part-time job with Fun Makers where he supervised employees, set up and tore down inflatables, and drove company vehicles. (Tr. 47, 64-65). Additionally, he socialized with friends, attended church, flew planes and hot air balloons, and babysat. (Tr. 44-45, 65, 232, 255, 349). Plaintiff was able to use a computer, was an ordained minister, and had driver's and student pilot's licenses. (Tr. 65, 83, 89-90, 254).

Turning to Plaintiff's work history, the record contains evidence that Plaintiff oversaw children's parties, staffed a front desk, and babysat. (Tr. 40-41, 44-45, 47). He indicated he was in the process of being promoted and would soon supervise his own events for Fun Makers. (Tr. 48). As the ALJ noted, these activities evidence an ability to be responsible. (Tr. 19).

Furthermore, Plaintiff previously worked part-time in a kitchen and as a dishwasher, garage door installer, and bowling alley front desk person. (Tr. 49-54, 61, 209-10). In contradiction to his claims of disabling pain, Plaintiff admitted each job required significant physical exertion. (Tr. 61-62). Although Mr. Simmons testified Plaintiff left these jobs due to his impairments, Plaintiff said he left due to reduced hours or because a business closed. (Tr. 49-50, 53-54, 61, 77-80). Furthermore, Mr. Simmons described Plaintiff's disability as mental rather than physical in nature. (Tr. 75, 82-83, 256, 258).

The ALJ also considered Plaintiff's medical history and non-compliance with prescribed treatment. (Tr. 19). To this end, the ALJ indicated Plaintiff was prescribed medication for anxiety, insomnia, and ADHD, but reportedly stopped taking his medications because they caused homicidal ideations or interfered with control of his migraine headaches. (Tr. 19-20, 56, 58, 296). At the time of the hearing, Plaintiff only took medication for headaches as needed, received allergy injections, and had tubes placed in his ears. (Tr. 84). Further, as the ALJ noted, Plaintiff did not receive mental health counseling or regularly report migraines to his doctors. Objective tests related to Plaintiff's allegations of pain including an x-ray and ANA examination were negative. (Tr. 279, 283). What is more, Plaintiff consistently had good physical exam results, including intact gait and normal strength, range of motion, and tone. (Tr. 291, 294, 297, 365, 368, 373, 394). Similarly, Plaintiff consistently had neurologically intact motor and sensory functions and reflexes. (*Id.*).

In sum, the ALJ accurately considered the evidence of record and made a determination that Plaintiff's activities of daily living, work history, medical history, and noncompliance diminished his credibility regarding allegations of disabling pain.

*RFC*

Summarily, Plaintiff argues the Commissioner "failed to satisfy its burden of proving that [Plaintiff] has the [RFC] to work as a 'swatch clerk', bagger, or garment sorter." (Doc. 11, at 9). A claimant's RFC is an assessment of "the most he can still do despite his limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. An ALJ must also consider and weigh medical opinions. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

As mentioned above, the ALJ properly elicited testimony from the VE and evaluated Plaintiff's credibility. The undersigned agrees with the Commissioner's unrefuted assertion that the record does not suggest there is relevant evidence to support a specific limitation beyond light work activity. (Doc. 13, at 10). Furthermore, the undersigned concludes the ALJ satisfied her regulatory duties by considering medical opinions, Plaintiff's activities of daily living, work history, treatment record, objective evidence of record, and credibility. Accordingly, the ALJ's RFC is supported by substantial evidence.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner applied the correct legal standards and finds the Commissioner's decision denying DIB and SSI benefits supported by substantial evidence. The undersigned

therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II<br>United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).